IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER L. ANDREWS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 10-00524-N |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

ORDER

Plaintiff Christopher L. Andrews, filed this action seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") that he was not entitled to disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401-433 and 1381-1383c. Pursuant to the consent of the parties (doc. 20), this action has been referred (doc. 22) to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R.Civ.P. 73. Further, plaintiff's unopposed motion to waive oral arguments (doc. 19) was granted on July 29, 2011 (doc. 21). Upon consideration of the arguments of counsel, the administrative record (doc. 12), and the parties' respective briefs (docs. 13 as supplemented by 15, and 17), the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.

Procedural History.

Plaintiff, Christopher L. Andrews, filed an application for disability insurance benefits ("DIB") on November 7, 2005, claiming an onset of disability as of August 26, 2004 (Tr. 63-67). Andrews also filed an application for Supplemental Security Income ("SSI") benefits on November 7, 2005 (Tr. 210-214), with a protective filing date of November 3, 2005 (Tr. 215). These applications[1] were initially denied[2] and a request for hearing was filed on March 30, 2006 (Tr. 55). A hearing before an Administrative Law Judge ("ALJ"), specifically the Honorable Glay Maggard ("Judge Maggard"), was held on July 10, 2007 (Tr. 543-58) at which there was no vocational expert. At that hearing, plaintiff amended his alleged onset date to July 1, 2005(Tr. 82).

Judge Maggard issued a decision on August 13, 2007, denying plaintiff's applications (Tr. 222-32). Although Judge Maggard found that plaintiff suffers from the severe impairments of diabetes mellitus, peripheral neuropathy, hypertension, osteoarthritis versus arthralgias/myalgias, and obesity (Tr. 227), he determined that plaintiff retains the residual functional capacity to perform light work with no climbing of ladders, ropes, or scaffolding, and no more than occasional balancing, stooping, kneeling,

---

[1] Plaintiff filed his first set of applications for SSI and DIB on November 4, 2005 (Tr. 63-67, 210-14), and a subsequent set of applications on October 17, 2007 (Tr. 448-56). The Appeals Council ordered the ALJ to consolidate Plaintiff's claims on remand (Tr. 242). *See* 20 C.F.R. §§ 404.952(a)(2) (if the ALJ consolidates the claims, he will decide both claims), 416.1452(a)(2) (same).

[2] Under 20 C.F.R. §§ 404.906, 416.1406 (2010) after the initial determination, the claim immediately proceeded to an administrative hearing. No request for reconsideration was required. All references to the Code of Federal Regulations (C.F.R.) are to the 2010 edition.

crouching, crawling, or climbing of ramps/stairs. (Tr. 228). Judge Maggard explicitly adopted the opinions of the State Agency medical consultant in determining these limitations. (Tr. 229 and 230). Judge Maggard stated that the "conclusory opinions" of Dr. Gibbs and Dr. Lane, that Mr. Andrews is "100 percent disabled", are entitled to no evidentiary weight. (Tr. 230).

Based upon his residual functional capacity determination, Judge Maggard found that plaintiff cannot perform any past relevant work, which had consisted of a tire changer, a lumber flipper, and a truck driver (Tr. 230-31). Judge Maggard ultimately concluded that "there are jobs that exist in significant numbers in the national economy that [Andrews] can perform" and that, consequently, he was not disabled. (Tr. 231-32).

Andrews' request for a review of Judge Maggard's decision (Tr. 233-34) was granted by the Appeals Council, which then remanded the claim for further administrative proceedings. In it's order of remand dated June 19, 2008, the Appeals Council directed that additional evidence concerning plaintiff's mental impairment be obtained in order to complete the administrative record (Tr. 240-42).

A second ALJ, the Honorable Katie Pierce (herein "the ALJ"), held a hearing on January 23, 2009, at which both Andrews and an impartial vocational expert testified. On March 13, 2009, Judge Pierce issued an unfavorable decision (Tr. 14-27). Judge Pierce specifically concluded that Andrews "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526 and 416.926)." (Tr. 18-

20).  Judge Pierce also concluded that Andrews retains the residual functional capacity to perform sedentary work with certain limitations. (Tr. 20).

Andrews' request for a review of Judge Pierce's decision was denied by the Appeals Council on August 20, 2010 (Tr. 7-9), making the second ALJ's decision the final administrative decision. *See* 20 C.F.R. §§ 404.981, 416.1481.  Andrews now appeals from that decision and all administrative remedies have been exhausted.

I.  Issues on Appeal.

1. Whether the ALJ failed to address the ability of Andrews to work at a production pace and thus erred in concluding that there would be jobs existing in significant numbers in the national economy available to Andrews?

2. Whether the ALJ erred when he found that Andrews did not meet Listed Impairment 12.05C?

II.  Standard of Review.

In reviewing claims brought under the Act, this Court's role is a limited one.  Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. *See*, 42 U.S.C. § 405(g); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Lewis v. Callahan, 125 F.3d

4

1436, 1440 (11th Cir. 1997); Chater, 84 F.3d at 1400; Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991).  *See also*, Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Lynch v. Astrue, 358 Fed.Appx. 83, 86 (11th Cir. 2009); Martino v. Barnhart, 2002 WL 32881075, * 1 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).

   III.  Discussion.

      A.  Production Pace.

Andrews' first assignment of error is that the ALJ "fails to address whether Mr. Andrews can perform work at a production pace."  (Doc. 13 at 6).  Andrews then argues that, because this determination of production pace was critical to any determination that "there would be jobs existing in significant numbers in the national economy available to Mr. Andrews," the ALJ necessarily erred in determining otherwise. Andrews relies, *inter alia*, on Winschel v. Commissioner of Social Sec., 631 F.3d 1176 (11th Cir. 2011), for its holding that:

> Next, Winschel argues that the ALJ's finding of no disability is not supported by substantial evidence because the hypothetical question upon which the vocational expert based his testimony omitted Winschel's moderate limitations in maintaining concentration, persistence, and pace, despite the ALJ's finding that Winschel's mental impairments caused such limitations.
>
> At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. Phillips, 357 F.3d at 1239[3]; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert. Phillips, 357 F.3d at 1239-40. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam).
>
> \* \* \*
>
> In this case, the ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical. Consequently, the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert. Because the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of Winschel's impairments, the vocational expert's testimony is not "substantial evidence" and cannot support the ALJ's conclusion that Winschel could perform significant numbers of jobs in the national economy. Accordingly, we reverse. On remand, the ALJ must pose a hypothetical question to the vocational expert that specifically accounts for Winschel's moderate limitation in maintaining concentration, persistence, and pace. Reversed and Remanded.

(Doc. 15 at 1-2, *quoting* Winschel, 631 F.3d at 1180-81. Winschel is, however, clearly distinguishable from the case at bar.

---

[3] Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).

Unlike the ALJ in <u>Winschel</u>, Judge Pierce specifically included in her second hypothetical to the Vocational Expert not only the limitation of performing only one to two step tasks, but the limitation of an individual who can maintain concentration and attention for two hours at a time, with no "limitation of being unable to work at production rate and pace." (Tr. 570)  It was in answer to this second hypothetical that the Vocational Expert identified the job of an "Assembler, sedentary, unskilled, which is one to two step" and is available to Andrews in the following numbers: approximately 104,000 in the national economy, 1,600 regionally and 100 locally. (Tr. 570).  Two other jobs were identified by the Vocational Expert in answer to this second hypothetical: (1) a "Surveillance system monitor [which] is also sedentary and unskilled with SVP level two" and is available to Andrews in the following numbers: approximately 103,000 in the national economy, 15,000 regionally and 102 locally, and (2) a "Gate guard" of which approximately 250,000 jobs exists in the national economy, 25,000 regionally and 100 locally. (Tr. 570).   Although it is true that Judge Pierce did not refer to Andrews' ability to perform work at a production pace in the residual functional capacity set forth at her Finding of Fact No. 5,[4] there is no doubt that she adopted that position because she

---

[4] Finding of Fact No 5 states:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can occasionally climb ramps and stairs, but cannot climb ropes, ladders or scaffolding. The claimant can occasionally stoop, kneel, crouch or crawl. He cannot perform overhead work with the left upper extremity. The claimant can perform jobs requiring one or two step tasks and he can concentrate for up to 2 hours at a time.

(Continued)

specifically relied upon the Vocational Expert's answer to her second hypothetical question to find as follows:

> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 104.1569a, 416.969, and 416.969a).

(Tr. 26, Finding of Fact No. 10).   Judge Pierce did state in her decision that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties"  (Tr. 19), which clearly refers to a finding by Donald E. Hinton, Ph.D., the State Agency psychiatrist (Tr. 22, 494).  Andrews contends that the ALJ "fails to indicate whether this "moderate" deficiency in persistence or pace translates into work-related limitations." (Doc. 13 at 8).  Consequently, Andrews argues that:

> It could be reasonably inferred that a "moderate" deficit in ability to maintain persistence or pace would translate into the inability to reliably sustain the persistence or pace required for production level work. The absence of a specific finding of fact by the ALJ on this key issue leaves a reviewing court no basis for determining whether the Commissioner's decision is supported by substantial evidence.

(*Id*. at 9).   However,  in addition to removing the word "concentration" from the functional limitation at issue, namely "Difficulties in Maintaining *Concentration*, Persistence *or* Pace" (Tr. 494, emphasis added), Andrews points to no evidence in the record which supports an inference that his deficiency was in fact one relating to "pace" as opposed to "concentration" or "persistence."  As stated above, the ALJ included in her

---

(Tr. 20).  Unlike Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985), another case relied upon by Andrews, the ALJ in this case did "pose a hypothetical question to the vocational expert which comprehensively describes [Andrews'] impairments.'

second hypothetical a limitation in the ability to concentrate to "2 hours at a time." Dr. Hinton's report confirms that Andrews' "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" is "not significantly limited." (Tr. 499). Dr. Hinton further concluded that Andrews is "able to understand, remember and to carry out short and simple instructions [and] is able to concentrate and attend for reasonable periods of time." (Tr. 500). In addition, the record contains the finding of Dr. Stephen West, an examining consultant, that all of Andrews' joints showed full range of motion and his only limitation involved his left shoulder. (Tr. 22, 482). The record also contains the report of Dr. Warren G. Brantley, Ph.D., who examined Andrews on December 30, 2007. Dr. Brantley noted not only that Andrews exhibited "blatant malingering on testing" but that he "walked with a non-perscriptive aluminum cane (with no wear on the handle or on the rubber tip of the cane)." (Tr. 478-480). Dr. Brantley specifically found, with respect to "Concentration, Attention and Memory:

> Blatant malingering began. [Andrews] could not do serial 7s, serial 2s, or simple serial 1s from 5. He could not sum any examples (even 1 + 1) or multiply any examples. He said he had "50" remaining when he subtracted a quarter from a dollar. He knew how many quarters and dimes were in a dollar, but said he did not know pennies and that there were "30" nickels. He was able to count from 1 to 20 very slowly, back to 1 with four omissions, mixed up the alphabet and omitted two letters, knew two-thirds of basic shapes and all basic colors. He said he did not know how to spell "CAT." ***Attention and concentration clearly are unimpaired***.
>
> Malingering continued on memory repeating two digits forward, two in reverse and remembering one of three objects in five minutes. He mixed up the numbers in his Social Security number and of his zip code; but knew his

9

> telephone number and area code; address, town, and state. He knew the
> ages of his daughters, but said he did not know their dates of birth.
> Memory presents as unimpaired. Understanding is consistent with
> Borderline IQ.

(Tr. 479)(emphasis added). The Eleventh Circuit in Winschel recognized, in the paragraph omitted by Andrews in his brief, that:

> [W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. *See* Simila v. Astrue, 573 F.3d 503, 521–22 (7th Cir. 2009); Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1173–76 (9th Cir. 2008); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001). Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations. *See* White v. Comm'r of Soc. Sec., 572 F.3d 272, 288 (6th Cir. 2009) (concluding that the ALJ's reference to a moderate limitation in maintaining "attention and concentration" sufficiently represented the claimant's limitations in concentration, persistence, and pace); Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (concluding that the hypothetical question adequately incorporated the claimant's limitations in concentration, persistence, and pace when the ALJ instructed the vocational expert to credit fully medical testimony related to those limitations).

Winschel, 631 F.3d at 1180-81. As applied to this case, there exists substantial medical evidence in this record to support Judge Pierce's findings and conclusions regarding the issue of Andrews' ability to maintain a production pace required for the jobs identified by the Vocational Expert in answer to the ALJ's second hypothetical question. Andrews' reliance on Morgan v. Astrue, 2010 WL 5376336, * 6 (S.D. Ala. Dec. 23, 2010), a case in which "the ALJ's findings lack sufficient detail to demonstrate that he intended to reject any lifting limitations or the basis for such a finding," is unavailing. It is also clear that

10

Judge Pierce "analyzed all evidence in the record" and has "sufficiently explained the weight [s]he has given to obviously probative exhibits." Edwards ex rel. Parker v. Astrue, 2011 WL 111682, * 4 (S.D. Ala. Jan. 12, 2011).  *See also* Jones v. Apfel, 190 F.3d 1224, 1229 (111th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."), cert. denied, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000). In this case, the ALJ did not fail to include all of Andrews' limitations in her second hypothetical question and appropriately relied on the evidence presented by the Vocational Expert regarding the existence of jobs available to Andrews to conclude that Andrews was not disabled.

      B.  Listing 12.05C.

Andrews also contends that the ALJ erred in failing to find that he was "disabled based upon meeting the requirements for presumptive disability at ¶12.05C of the Listings." (Doc. 13 at 13).  There is no merit to this contention.  The ALJ's finding that Andrews did not meet Listing 12.05 because he did not have significant limitations in adaptive functioning is supported by substantial evidence.

Unlike the other mental disorders listings in the regulations, Listing 12.05 contains an introductory paragraph, or a "diagnostic description," with criteria the claimant must meet in addition to meeting one of the "four severity prongs" for mental retardation.  *See* Randall v. Astrue, 570 F.3d 651, 659-60 (5th Cir. 2009); Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009); Novy v. Astrue, 497 F.3d 708, 709 (7th Cir. 2007); Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006); Foster v. Halter, 279 F.3d 348,

354 (6th Cir. 2001).  The Eleventh Circuit has recognized the distinction with respect to Listing 1205 as follows:

> Listing 12.05, the listing category for mental retardation, begins with an introductory paragraph, which states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. The listing further provides that the "required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." *Id.* Subsection C requires a claimant demonstrate "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. at § 12.05(C). Section 12.00A states in pertinent part that "[l]isting 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing." Id. at § 12.00A (emphasis added).
>
> We have determined that, to be considered for disability benefits under Listing 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive functioning; and (3) have manifested deficits in adaptive behavior before age 22. Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir.1997). In addition, for presumptive disability under 12.05C, the claimant must have (1) a valid IQ score of 60 through 70 inclusive, and (2) an additional mental or physical impairment significantly affecting the claimant's ability to work. *Id.* at 1219-1220.

Pettus v. Astrue, 226 Fed. Appx. 946, 948 (11th Cir. 2007).  *See also* Randall, 570 F.3d at 659-60 ("[A] claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria ...."); Wall, 561 F.3d at 1062; Novy, 497 F.3d at 709-10(Listing 12.05(C) claimant required to satisfy the description's definition of mental retardation "in addition to" the severity criteria and held that an IQ between 60 and 70 "is

12

insufficient, even with the presence of some impairment, to establish disability per se on grounds of mental retardation" and that "[t]he key term in the introductory paragraph of section 12.05 of the regulation, so far as bears on this case, is 'deficits in adaptive functioning.' "); Johnson v. Barnhart, 390 F.3d 1067, 1071 (8th Cir. 2004) (rejecting a Listing 12.05(C) claim where the claimant "did not display the significant limitations in adaptive functioning that 12.05 requires.").; Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001); Pettus , 226 Fed.Appx. at 948. As the regulations explain, "[i]f your impairment satisfies the diagnostic description in the introductory paragraph ***and*** any one of the four sets of criteria [paragraphs A through D], we will find that your impairment meets the listing." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) (emphasis added). Thus, meeting the introductory paragraph's diagnostic description for mental retardation is a prerequisite to consideration of paragraphs A through D, the "severity prongs" of Listing 12.05. As applied to this case, the ALJ adequately addressed each element of the Listing 12.05 claim. (Tr. 18-20, as well as 20-25).

Andrews challenges the ALJ's finding on a rather limited basis. Specifically, Andrews argues that his verbal IQ score of 69, which was obtained in 1988 when he was 13 years old, "is sufficient to meet the requirements of the first prong of ¶ 12.05C." (Doc. 13 at 14). Andrews then argues that "[t]he medical evidence, and indeed the ALJ's own findings, fulfills the second prong of ¶ 12.05C." (*Id*.).

With respect to the first prong of the Listing 12.05, Andrews points to no evidence demonstrating the existence of the requisite deficit in adaptive functioning. The capsule definition of Listing 12.05(c) requires that a claimant demonstrate significantly

13

subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., prior to age 22. The degree of deficits in adaptive functioning needed to meet the requirements of Listing 12.05(c) is not specified in the statute. A quantitative definition of adaptive functioning is, however, found in the *Diagnostic and Statistical Manual of Mental Disorders 49* (4th ed. Text Rev. 2000)(DSM-IV). The DSM-IV provides:

> The diagnostic criteria for mental retardation include "[c]oncurrent deficits or impairments in present adaptive functioning . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (emphasis added).[5]

Andrews relies solely on the fact that at 13 years of age he exhibited a verbal IQ score of one point less than the cut off mark of 70 required under Listing 12.05(c) and attended special education classes from the fourth grade until he left school in the ninth grade. (Tr. 279-282). In contrast, the record contains ample evidence that Andrews did not suffer the requisite deficits in adaptive functioning. Andrews has never contended that he was unable to care for himself with respect to bathing and dressing. Although he claims not to cook, he does not contend that he needs any assistance in feeding himself. Andrews obtained a commercial driver's license after taking a regular written test and thereafter drove a truck for a logging company. (Tr. 549, 565). Andrews past work experience

---

[5] The Social Security Agency noted that the definition of Mental Retardation used in the listings is consistent with the definitions of Mental Retardation used by the leading professional organizations. Technical Revisions to Medical Criteria for Determinations of Disability, 67 FR 20018, 20022 (April 24, 2002).

from 1999 to 2004 included work as a tire changer, which is classified as semiskilled with an "SVP level of three"; work as a lumber sorter, which is classified as unskilled with an "SVP level of 2"; and work as a truck driver, which is classified as semiskilled with an "SVP level of 4."  (Tr. 261, 569).   Although Andrews testified that he read very little, he reported that he does read "newspapers and my Bible."  (Tr. 274, 564).

      Andrews fairs no better with respect to the second prong of Listing 12.05. Although the ALJ found at step two of the disability evaluation process that Andrews has severe impairments of borderline intellectual functioning, diabetes, neuropathy, hypertension, osteoarthritis and obesity (Tr. 18), she clearly explained why these conditions did not meet or medically equal one of the listed impairments evaluated at step three:

> With regard to diabetes, the evidence does not confirm any history of neuropathy characterized by significant and persistent disorganization of motor function in two extremeties resulting in sustained disturbance of gross and dexterous movements, or gait and station.  Moreover, there is no history of episodes of acidosis or retinis proliferans.  The claimant's diabetes therefore does not meet Medical Listing 9.08.  With regard to the osteoarthritis, the [ALJ] considered the requirements of Listing 1.02 and finds that the claimant's symptoms do not satisfy the criteria necessary to meet that listing.  Specifically, the claimant is able to ambulate effectively. The claimant's mental impairment has been considered under the requirements of listing 12.05.  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *I.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in paragraphs A, B, C, or D are satisfied.
>
> The requirement in paragraph A are met when there is mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the

use of standardized measures of intellectual functioning is precluded. In this case, these requirements are not met because the claimant's IQ scores are in the 70's. The claimant is able to ambulate effectively and his diabetes does not rise to the level of required severity.

Turning to the requirements of paragraph B, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less.

In terms of the requirements of paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Finally, the requirements in paragraph D are met if the claimant has a valid verbal, performance or full scale IQ of 60 through 70, resulting in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within a year, or an average of once every 4 months, each lasting at least two weeks.

In activities of daily living, the claimant has mild restrictions. The claimant reported that he is the head of his household and supervises 2 teenagers.

In social functioning, the claimant has mild difficulties. The claimant reported that he visits with family and friends regularly.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant stated that he is able to read and watch TV.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Accordingly, the requirements of paragraph D are not satisfied.

(Tr. 19-20).

With respect to Listing 12.05(c), three prongs must be satisfied: (1) mental retardation, i.e., significantly subaverage general intellectual functioning with deficits in adaptive behavior, initially manifested during the developmental period; (2) a valid verbal, performance, or full scale intelligence quotient (IQ) score in the range specified by Listing 12.05(c); and (3) a physical or other mental impairment that imposes an additional and significant work-related limitation of function.  *See* Sullivan v. Zebley, 493 U.S. 521, 530 (1990)("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); 20 C.F.R. § 404.1525 ("To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing.").  Despite Andrews' protestations to the contrary, the ALJ did not err in concluding that he met none of the requirements for Listing 12.05(c) and was not, therefore, disabled.

## IV.    CONCLUSION

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff's benefits be and is hereby **AFFIRMED**.

**DONE** this   23rd   day of Novemberber, 2011.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE**